**INTERNATIONAL SECURITY LIFE IN-SURANCE COMPANY, Appellant,**

v.

**Juanita R. LINDSEY et al., Appellees.**

**No. 4399.**

Court of Civil Appeals of Texas, Eastland.

Oct. 23, 1970.

A. J. Bryan and David Farris, Ft. Worth, for appellant.

J. Dell Barber, Colorado City, for appellees.

COLLINGS, Justice.

Juanita R. Lindsey and husband, W. A. Lindsey, Jr., brought this suit against the International Security Life Insurance Company to recover hospital and doctor bills on a policy of insurance issued by the Defendant. Plaintiffs alleged that on February 2, 1969, Mrs. Lindsey was hospitalized in the Malone and Hogan Foundation Hospital in Big Spring, Texas, for diagnosis purposes and surgery, where she was confined and remained under treatment and care of licensed physicians and nurses until February 19, 1969; that by reason of hemorrhoids, the resulting complications, and sur-

gery, reasonable and customary charges were made by the hospital and paid by Plaintiffs. The Defendant answered by a general denial, and further alleged that it was not liable on any of the claims of the Plaintiffs because Defendant's liability under the policy was by its terms subject to all the provisions, exclusions and limitations set out therein, and that Plaintiffs did not negative such provisions, exclusions, and limitations in their petition. Defendant asserted that judgment should therefore be rendered that Plaintiffs take nothing. The case was tried before the court without a jury and judgment was rendered for Plaintiffs for hospital and doctor bills in the amount of $729.50, for statutory penalty in the sum of $87.54 and $500.00 attorney fees. The Defendant has appealed.

The policy of insurance in question provides that the Appellant company will pay indemnities for usual and customary expenses actually and necessarily incurred only while the person insured is confined as a bed patient in a legally constituted hospital which maintains complete and permanent records on the history of each patient. The policy further provides that the term "legally constituted hospital" does not include institutions operated primarily or principally as rest homes, nursing homes, or homes for the care of the aged, etc.

In Appellant's first and second points it is contended that Appellees herein have failed to prove essential elements of their cause of action in that there is no evidence that (1) the Malone and Hogan Foundation Hospital in Big Spring, Texas, at the time in question was not an institution operated principally as a rest home, nursing home, or home for the care of the aged, and (2) that there is no evidence that the Malone and Hogan Foundation Hospital at the time in question maintained permanent records on the history of each patient, and that it was therefore not proved that such hospital was a "legally constituted hospital" as defined in the policy. We cannot agree with this contention.

Appellees introduced as evidence the hospital license of the Malone and Hogan Foundation Hospital of Big Spring granted by the Texas State Department of Health which certifies that such hospital having complied with the provisions of Article 4437f, Vernon's Ann.Civ.St., and the minimum standards established by the State Board of Health is licensed to operate a hospital. Article 4437f defines the term "general hospital" and provides that the term hospital does not include facilities licensed pursuant to the provisions of Article 4442c, which latter statute applies to and deals with convalescent and nursing homes and related institutions. Appellee Mrs. Lindsey who had worked in the Root Memorial Hospital for about five years testified that Malone and Hogan Foundation Hospital had its own laboratory, x-ray equipment, operating room where major surgical operations may be performed and has permanent and full time facilities for the care of overnight resident patients. She further testified that patients in such hospital were at all times under the supervision of a licensed doctor of medicine and a graduate registered nurse. She testified that the hospital maintains complete records on each patient. This constitutes evidence that the Malone and Hogan Hospital was a legally constituted hospital as contemplated by the policy, and was not an institution operated principally as a rest home, nursing home or a home for the care of the aged. It also constitutes some evidence that the Malone and Hogan hospital maintains permanent records on the history of each patient. Appellant's first and second points are overruled.

By the terms of the policy of insurance in question provision is made for payment of indemnities only while the insured is confined as a patient in a legally constituted hospital, and where the hospital expenses are authorized by a legally qualified doctor of medicine. Appellant contends in its third, fourth and fifth points that Appellees have failed to prove a cause of action in that there was no evidence that the hos-

pital bill and the items of expense in connection therewith were authorized by a legally qualified doctor of medicine, no evidence that such hospital bill, or doctor bill, and the items of expense stated therein, were necessarily incurred. These points are overruled.

■ Appellee, Mrs. Lindsey, testified that Dr. Melvin A. Porter, M. D., was her family doctor to whom she had been going for several years; that he was in a clinic in Big Spring and was also connected with the Malone and Hogan Hospital. Dr. Porter's license to practice medicine and surgery in the State of Texas, dated December 14, 1953, pursuant to the statutes of this state was introduced as evidence without objection. The record shows that Mrs. Lindsey underwent surgery in the Malone and Hogan Hospital in Big Spring in February of 1969. She testified that on January 31, 1969 she went to Dr. Porter at his office in Big Spring for her usual annual check up and that nothing was found wrong with her at that time, and that she then returned to her home in Colorado City. This suit does not involve charges made in connection with Appellee's annual physical check up. Mrs. Lindsey stated that she first went to the Malone and Hogan Hospital in connection with surgery on February 10, 1969. She stated that she had started severe bleeding the day before and called Dr. Porter, her doctor, at the Malone and Hogan Hospital about the matter. She stated that on February 10, 1969 she went to see her doctor in Big Spring and consulted with him; that she was placed in the hospital by her doctor and given tests to determine the cause of the bleeding, and after such examinations by Dr. Porter she underwent a hemorrhoidectomy on February 15, 1969 at such hospital where she had been confined from February 10, 1969. She remained in the hospital thereafter until February 19, 1969 when she was released by Dr. Porter. The introduction of the license of Dr. Porter shows that he was a duly licensed physician and surgeon. The testimony of Mrs. Lindsey indicates that after she went to Dr. Porter because she was suffering from bleeding that he, after examination and tests, performed the operation in question. Appellee testified that she had never had any prior trouble with hemorrhoids and did not know prior to the time she went to see Dr. Porter on February 10, 1969 that she had any such condition. She stated that the bleeding stopped after the operation. In our opinion the testimony, facts and circumstances shown constitute some evidence that the operation was necessary.

Appellee testified that she presented the hospital bill here involved to Appellant insurance company for payment. Such bill covered the period from February 10, to February 19, 1969 and was for only the surgery, hospitalization and expenses connected therewith. Mrs. Lindsey testified that she had worked in a hospital for about five years, and was more or less familiar with charges made for hospitalization, doctors' bills and other expenses in connection therewith. She in effect stated that she was satisfied with the charges made as being necessary and reasonable.

Appellees stated that Appellant refused to pay the bill; they testified that they are responsible for the bill and are being charged interest thereon by the hospital. Appellees also introduced in evidence a letter received from Appellant insurance company stating that Appellee's claim for hospitalization showed that the sickness from which it resulted did not originate after it had been in force for as much as six months and advised Appellee that because of such fact she was not entitled to benefits under the policy.

Appellee Mrs. Lindsey further testified that she paid the bill she received for the examination and regular annual check up on or about February 1, 1969. She testified and the record shows that Appellees do not seek to recover any portion of this bill.

The testimony, facts, and circumstances as set out in the record constitute some evidence that the hospital bill sued upon was

authorized by a legally qualified doctor of medicine and that the hospital and doctor bill and items of expense in connection therewith were necessary and reasonable. Appellant's third, fourth, and fifth points are overruled.

 As heretofore noted, Appellee's sought to recover for hospitalization and doctor bills by reason of hemorrhoids and the resulting complication and surgery in connection therewith. The policy provides benefits due to sickness only if the sickness or illness is contracted and originates after the effective date of the policy and subject to the waiting period set forth and Part IX of the policy under the heading of exclusions. Appellant alleged as an affirmative defense the exclusions contained in Part IX of the policy. In points six, seven and eight, Appellants contend that Appellees failed to meet their burden and that there is no evidence to negative the policy exclusions to the effect that (1) no indemnities are payable for any loss resulting from treatment involving a tumor or strain if the cause originates before the policy has been in force for twelve months and that Appellees failed to meet their burden of proof, and there is no evidence to negative the pleaded policy exclusion to the effect that no indemnities shall be paid for any loss resulting from a sickness which results in surgical operations if the cause originates before the policy has been in force for at least six months. We cannot agree with this contention. Mrs. Lindsey testified that her sickness and the treatment and surgery therefor was because of hemorrhoids. The exclusion relating to treatment for cancer, tumor, back or spine, sprains and strains, or diseases of the heart or circulatory system was therefore not applicable. Mr. and Mrs. Lindsey both testified that Mrs. Lindsey had never had any bleeding of the rectum or hemorrhoids prior to February 10, 1969; that she had never had any prior trouble with hemorrhoids and did not know prior to February 10, 1969 that she had any such condition. Appel-

lant's sixth, seventh and eighth points are overruled.

 We also overrule Appellant's ninth point in which it is contended that Appellees failed to meet their burden of proof and that there is no evidence to negative the pleaded policy exclusion that no indemnities should be payable for any loss resulting from sickness in cases where hospitalization is provided at the expense of any philanthropic or fraternal or eleemosynary or government institute or agency, or is otherwise provided without cost to the person insured. Mr. Lindsey testified that he had not paid the hospital and doctor bill in question; that he had first assigned the claim against the insurance company to the hospital and doctor, but the insurance company refused payment; that the bill was then assigned back to him, and that he was being charged interest on the amount of the bill. He stated that it was satisfactory with the hospital for Appellees not to pay the bill at the present time, but that Appellees were being held responsible for such bill. Appellant's ninth point is overruled.

The judgment is affirmed.